KISS, Appellant,

v.

**OHIO MOTOR VEHICLE DEALERS BOARD, Appellee.**

[Cite as *Kiss v. Ohio Motor Vehicle Dealers Bd.* (1991), 76 Ohio App.3d 677.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59358.

Decided Nov. 18, 1991.

*Andrew B. Kiss, pro se,* appellant.

*Lee I. Fisher,* Attorney General, and *Angela G. Phelps–White,* Assistant Attorney General, for appellee.

KRUPANSKY, Chief Justice.

Appellant appeals from the order of the Cuyahoga County Court of Common Pleas affirming the Ohio Motor Vehicle Dealers Board's decision to revoke his license.

The relevant facts follow:

Appellant's business, Kiss Brothers Used Auto Sales, was the subject of an investigation by the Ohio Bureau of Motor Vehicles and the Cleveland Police Department. On June 17, 1988, the bureau and the police conducted a "raid" on the property. No illegal activity was discovered; however, an investigator with the bureau conducted an inspection of the premises. He found numerous violations of the motor vehicle dealers licensing laws. The investigator took photographs of the condition of the premises and submitted his report and the photographs to the Ohio Bureau of Motor Vehicles.

Appellant was subsequently notified that a complaint was received by the Ohio Motor Vehicle Dealers Board and that the board would consider suspension or revocation of appellant's motor vehicle dealer's license. Appellant requested a formal adjudication hearing pursuant to R.C. 119.06. At the hearing, the investigator testified for the state concerning what he had observed about appellant's premises. The investigator's photographs were also admitted by the state as evidence. Appellant's father was the sole witness to appear on appellant's behalf. Thereafter, appellant was notified of the decision to revoke his license for violations of R.C. 4517.03(C), R.C. 4517.10, Ohio Adm.Code 4501:1-3-03, 4501:1-3-04 and 4501:1-3-08. Appellant thereupon filed a notice of appeal with the Cuyahoga County Court of Common Pleas.

The court of common pleas reviewed the record and affirmed the board's decision. Appellant now timely appeals from the judgment entry to this court.

■ Appellant has failed to file a brief in accordance with App.R. 19 and App.R. 16. However, appellant is acting *pro se,* and it is "a basic tenet of Ohio jurisprudence that cases should be decided on their merits." *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 7 OBR 256, 454 N.E.2d 951. Therefore, since dismissal is not warranted in this case, this court will use its discretionary power to consider the appeal. *Perry v. Perry* (1982), 7 Ohio App.3d 318, 7 OBR 413, 455 N.E.2d 689.

Appellant's first assignment of error seems to be the following:

"The Motor Vehicle Dealers Board's order revoking appellant's license was not done in accordance with the law."

■ This assignment of error lacks merit.

Appellant argues that the board improperly revoked his license because there was insufficient evidence to support its finding that appellant violated dealer licensing laws. Specifically, he argues that it was improper to base the revocation on the testimony of the Bureau of Motor Vehicles inspector. These arguments are unpersuasive.

R.C. 4517.12 states in relevant part the following:

"(A) The registrar of motor vehicles shall deny the application of any person for a license as a motor vehicle dealer, motor vehicle leasing dealer, or motor vehicle auction owner and refuse to issue him the license if the registrar finds that the applicant:

" * * *

"(2) Has not complied with sections 4517.01 to 4517.45 of the Revised Code * * *."

Further, R.C. 4517.33 provides the following:

"The board may make rules governing its actions relative to the suspension and revocation of dealers' * * * licenses, * * *, and may, upon its own motion, and shall, *upon the verified complaint in writing of any person,* investigate the conduct of any licensee or permit[t]ee under sections 4517.01 to 4517.65 of the Revised Code. * * *

" * * *

"The board may suspend or revoke any license or permit *if the licensee or permit[t]ee has in any manner violated the rules issued pursuant to sections 4517.01 to 4517.65 of the Revised Code,* or has violated section 4501.02 of the Revised Code, or has been convicted of committing a felony or violating any law that in any way relates to the selling, taxing, licensing, or regulation of sales of motor vehicles." (Emphasis added.)

The board based its revocation of appellant's license on violations of several laws relating to the sale of motor vehicles.

In revoking appellant's license, the board made the following findings of fact:

"On or about September 22, 1988, a Bureau of Motor Vehicles field inspection of Respondent's dealership premises revealed that the display area did not have the required 3,500 square feet of display area of hard surface and the area was littered with debris, salvage and carcasses of animals. The report also indicated that the dealership was not separated from another business; the office had no electricity, heat, or telephone; the office was not kept in a neat and orderly fashion, was not easily accessible or open to the public and was not identified exclusively for the sale of motor vehicles. Also, the inspection revealed the records of the business were not easily accessible;

no sign for the business was posted; and the dealer permit was not displayed; all in violation of Sections 4517.03(C) and 4517.10 of the Ohio Revised Code and Sections 4501:1–3–03, 4501:1–3–04 and 4501:1–3–08 of the Ohio Administrative Code."

At the revocation hearing, the board heard testimony from the field inspector who visited appellant's dealership. The inspector testified that a surveyor's report indicated the appellant's dealership actually consisted of four adjoining properties. He further testified that upon his visit to appellant's dealership, he initially observed there was no 3,500-square-foot display area. The inspector then testified as follows:

" * * * There was no direct entrance onto the Kiss property itself in question here as far as the used car dealership is concerned.

"I thought that this was a salvage yard when I first saw it, and I looked for the sign and it did say telephone—it gave a couple of telephone numbers and the time from 10:00 to 4:00. That was all that the sign entailed.

"I went onto the property and began taking photographs. The first thing I noticed was the overwhelming stench coming off of the property. There were bones around the locations where the dogs had been tied. There was also two rats at that location, * * * in order to get to the office door * * * you have to go across Mr. Kiss' property, the property owned by another person onto the Kiss property behind a van. When you went behind the van, this is where the dead rats were and all these bones.

" * * * I observed the entrance and you couldn't walk directly into the entrance. You had to weave around one object there that appeared to be an old refrigerator or something plus other cars.

"The front door was open and I walked in. The place was piled with trash and junk of all kinds as I walked in. There was an office with 180 degrees behind me to the left, and this also was cluttered with junk. I took photographs of all of this.

"There was a telephone laying [sic] on the floor with the receiver off. I picked it up and listened to it. I received no dial tone. I couldn't turn on any lights. There was no heating. The place was just in plain English a disaster area.

" * * * *

"I looked around for the permit. I couldn't find the permit on the walls, on top of the trash, nowhere. I did see Mrs. Kiss later and I asked her about the permit. She said she didn't keep it there because she was afraid it would get stolen."

The field inspector had taken photographs of the conditions he observed, and these photographs were also admitted into evidence at the revocation hearing. Subsequently, the board found violations of R.C. 4517.03(C) and 4517.10 and Sections 4501:1–3–03, 4501:1–3–04 and 4501:1–3–08 of the Ohio Administrative Code.

The board's findings are adequately supported by the record in the case *sub judice.*

R.C. 4517.03(C) requires a used motor vehicle dealer to sell vehicles at an established place of business that is used exclusively for the purpose of selling motor vehicles. The evidence adduced at the hearing supported a finding that appellant was in violation of this statute. The photographs show the property was littered with salvage, debris and vehicles in various states of repair or disrepair. The inspector had difficulty contacting the dealership using the posted telephone numbers: one number was not in service and the other was answered by a "hello" and not with the name of the business. He testified that the dealership did not appear to be open for business.

Additionally, the board found violations of Ohio Adm.Code 4501:1–3–08. This code section requires the place of business to be separated from any other business or residence with a permanent physical barrier. That section also requires a minimum lot size of 3,500 square feet and "adequate ground cover * * * to prevent unsightly conditions." The investigator's testimony verified by the photographs supported the board's finding that there was no barrier separating the dealership property from adjoining properties, no ground cover, and that there existed many unsightly conditions, *e.g.,* overgrown weeds, trash, junk, debris, dead rats and bones for dogs to name a few.

Ohio Adm.Code 4501:1–3–08 further provides that the permanent structure for conducting the business on the property should meet some basic requirements.[1] The testimony and the photographs both indicate these requirements were not met. The inspector testified the building on the premises lacked both a heating system and a working telephone. He testified he had difficulty moving around in the building due to the piles of trash therein.

---

1. Ohio Adm.Code 4501:1–3–08 provides in relevant part the following:

   "There shall be a permanent structure on the premises * * * which shall include, at minimum, windows, electric lighting, heating, a telephone in service, a desk, three chairs and a filing cabinet, all of which shall be kept in a neat and orderly fashion. The structure shall be occupied by the business, easily accessible to the public and open for business no less than thirty hours per week during generally accepted business hours * * * and is used and identified exclusively for the sale of motor vehicles. The regular business hours shall be prominently posted on the premises."

The board also found a violation of Ohio Adm.Code 4501:1–3–04,[2] since appellant's business records were not maintained on the business premises for reasonable inspection. The inspector testified he could not find appellant's business records in the structure; he later found the records were kept in Mrs. Kiss' home.

Furthermore, Ohio Adm.Code 4501:1–3–03 requires the business to have a "suitable sign." The testimony showed appellant's sign to be wholly inadequate; it consisted of two incorrect telephone numbers and "the time from 10:00 to 4:00. That was all that the sign entailed."

Appellant's license was also revoked for a violation of R.C. 4517.10, which provides in relevant part:

"Each dealer, * * * shall keep his license or a certified copy thereof and, in the case of a dealer, a current list of his licensed salespersons, showing the names, addresses, and serial numbers of their licenses, posted in a conspicuous place in each place of business."

The investigator's testimony revealed a license was neither displayed nor was it even on the premises.

Appellant's witness corroborated most of the evidence of these violations. None of the state's relevant evidence was seriously contradicted by appellant. Any conflict in the testimony is resolved by the trier of fact. In this instance the Motor Vehicle Dealers Board was the trier of fact.

A review of the record indicates the board based its decision to revoke appellant's motor vehicle dealer's license on sufficient facts supporting its finding of obvious violations of the statutes pertaining to the selling of motor vehicles. Under such circumstances, the board acted within its power when it revoked appellant's license. Thus, it can be said that the board's decision was made in accordance with the law.

Accordingly, appellant's first assignment of error is without merit.

Appellant's second assignment of error seems to be the following:

"The court of common pleas erred in affirming the board's decision to revoke his license."

---

2. Ohio Adm.Code 4501:1–3–04 provides in relevant part the following:

"(A) A motor vehicle dealer, a motor vehicle auction owner, and a motor vehicle distributor shall maintain the following records of all motor vehicles purchased and sold: "* * * *

"(B) Records must be maintained and easily accessible for a period of three years by those holding a license * * *.

"(C) The business records shall be open for reasonable inspection by the registrar or his authorized agent."

This assignment of error also lacks merit.

Appellant argues the board's decision was not based upon reliable evidence; therefore, the court of common pleas acting in its appellate capacity could not properly have held the board's order was appropriate. This argument is not persuasive.

Pursuant to R.C. 119.12, the court of common pleas must review the entire record to determine if the administrative agency's order is supported by reliable, probative and substantial evidence and is in accordance with the law. *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 7 OBR 1, 453 N.E.2d 1262. Appellate review of the court of common pleas decision is, in turn, limited to a determination of whether the court committed an abuse of discretion. *Kinney v. Dept. of Adm. Serv.* (1984), 14 Ohio App.3d 33, 14 OBR 37, 469 N.E.2d 1007; *A.G. & G. Co. v. Cuyahoga Cty. Bd. of Revision* (1988), 47 Ohio App.3d 117, 547 N.E.2d 403.

"In this context, the meaning of the term 'abuse of discretion' connotes more than an error of judgment; it implies a decision without a reasonable basis, one which is clearly wrong." *Angelkovski v. Buckeye Potato Chip Co.* (1983), 11 Ohio App.3d 159, 161–162, 11 OBR 242, 244, 463 N.E.2d 1280, 1283.

In the case *sub judice*, there was sufficient evidence, some of it uncontroverted, before the trial court of obvious and longstanding violations by appellant of the statutes pertaining to the selling of motor vehicles.

The testimony of the field inspector verified by the photographs taken the day of his inspection show appellant's property to be overgrown with weeds and littered with debris, including salvage auto parts, bones for dogs, dead rats and vehicles in various stages of repair or disrepair, with an office that was appropriately labeled "a disaster area."

The court of common pleas decision that the board's order revoking appellant's license was based upon substantial, reliable and probative evidence had a *more* than "reasonable" basis. Thus, the court of common pleas did not abuse its discretion in affirming the board's decision.

Accordingly, appellant's second assignment of error is overruled.

*Judgment affirmed.*

MATIA and BLACKMON, JJ., concur.