GENERAL MOTORS CORPORATION, Appellant and Cross–Appellee,

v.

MONTE ZINN CHEVROLET COMPANY et al., Appellees and Cross–Appellants.

CHRYSLER CORPORATION, Appellant and Cross–Appellee,

v.

OHIO MOTOR VEHICLE DEALERS BOARD, Appellee;

Monte Zinn Chevrolet Company, d.b.a. Monte Zinn
Dodge et al., Appellees and Cross–Appellants.

TOYOTA MOTOR SALES, U.S.A., INC., Appellant and Cross–Appellee,

v.

MOTOR VEHICLE DEALERS BOARD, Appellee;

Monte Zinn Chevrolet Company et al., Appellees and Cross–Appellants.

[Cite as *Gen. Motors Corp. v. Monte Zinn Chevrolet Co.* (2000), 136 Ohio App.3d 157.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 99AP–261, 99AP–262 and 99AP–263.

Decided Jan. 13, 2000.

158

*Jones, Day, Reavis & Pogue, Jeffrey J. Jones* and *Douglas M. Mansfield,* for appellee General Motors Corporation.

*Wheeler, Trigg & Kennedy, P.C., Mark F. Kennedy* and *Gwen J. Young,* for appellee Daimler Chrysler Corporation.

*Vorys, Sater, Seymour & Pease, L.L.P., Terry M. Miller* and *James A. Wilson,* for appellee Toyota Motor Sales, U.S.A., Inc.

*Phillips Law Firm* and *Robert S. Kaiser,* for appellants.

BOWMAN, Judge.

Appellants, Monte Zinn Chevrolet Company and Monte Zinn Motor Company ("Monte Zinn"), appeal a judgment of the Franklin County Court of Common Pleas reversing an order of the Ohio Motor Vehicle Dealers Board ("board") that appellees, General Motors Corporation, Chrysler Corporation, and Toyota Motor Sales, U.S.A., Inc., could not terminate their respective automobile dealer franchises with appellants because appellees had not established good cause. Appellants present the following assignment of error for review:

"The court of common pleas erred in reversing the decision of the Ohio State Motor Vehicle Dealers Board upholding the franchise termination protest of appellants Monte Zinn Motor Company and Monte Zinn Chevrolet Co."

In 1995, Monte Zinn pleaded guilty to violating Section 1546, Title 18, U.S.Code, a federal felony involving fraud, and Section 371, Title 18, U.S.Code, a federal felony involving conspiracy to commit fraud. In January 1996, Zinn was sentenced to two years' probation and ordered to pay a fine and a special assessment.

Zinn had separate franchise agreements with each of appellees, the franchisors. Each agreement contained a provision to the effect that the franchisor could

terminate the dealership if the dealer was convicted of a felony. Between August 1995 and January 1996, appellees individually served notice of their intent to terminate appellants' respective agreements with them.

Under Ohio law, "[n]otwithstanding the terms, provisions, or conditions of an existing franchise," a franchisor cannot terminate a franchise without "good cause." R.C. 4517.54(A). In turn, a franchisor who wants to terminate a franchise must send written notice to the franchisee, who may then file a protest with the board. R.C. 4517.54(B) and (C). When a timely protest is filed, the franchisee is entitled to a hearing, and the franchisor cannot terminate the franchise until and unless the board determines that good cause exists. R.C. 4517.54(C), (D). It is the franchisor's burden to establish good cause. R.C. 4517.57(C).

In determining whether good cause has been established, R.C. 4517.55(A) instructs the board to consider:

"[T]he existing circumstances, including, but not limited to:

"(1) The amount of retail sales transacted by the franchisee during a five-year period immediately preceding such notice as compared to the business available to the franchisee;

"(2) The investment necessarily made and obligations incurred by the franchisee to perform its part of the franchise;

"(3) The permanency of the franchisee's investment;

"(4) Whether it is injurious or beneficial to the public interest for the franchise to be modified or replaced, or the business of the franchisee disrupted;

"(5) Whether the franchisee has adequate motor vehicle sales and service facilities, equipment, vehicle parts, and qualified service personnel to reasonably provide for the needs of the consumers for the motor vehicles handled by the franchisee, and is rendering adequate service to the public;

"(6) Whether the franchisee fails to fulfill the warranty obligations of the franchisor required to be performed by the franchisee;

"(7) The extent and materiality of the franchisee's failure to comply with the terms of the franchise and the reasonableness and fairness of the franchise terms;

"(8) Whether the owners of the new motor vehicle dealer had actual knowledge of the facts and circumstances upon which termination is based;

"(9) Whether the proposed termination constitutes discriminatory enforcement of the franchise agreement."

Separate hearings on each of the protests were held before a board hearing examiner. As to each protest, the hearing examiner found that good cause had been shown and recommended that the protest be denied. Appellants appealed the recommendations to the board, which remanded the matters with instructions that the hearing examiner make factual findings regarding each of the factors enumerated in R.C. 4517.55(A). The hearing examiner filed amended recommendations, again recommending termination of appellants' franchises.

Although the hearing examiner's amended recommendations for the General Motors and Toyota protests are not identical, the fundamental conclusions are the same. The hearing examiner stated that all nine factors of R.C. 4517.55 need not be satisfied in order for good cause to be found. Specifically, the hearing examiner found a felony conviction constitutes a material breach of the dealer agreements and, thus, establishes good cause to terminate. The hearing examiner concluded that Zinn's felony conviction on charges of fraud and conspiracy to commit fraud, and the circumstances surrounding General Motors and Toyota's decisions to terminate appellants' franchises satisfied the good-cause requirement.

The hearing examiner then proceeded to separately apply the nine factors listed in R.C. 4517.55 to Zinn's conviction and the surrounding circumstances. The examiner opined that the factors set forth in R.C. 4517.55(A)(1), (2), (3), (5), and (6) had little legal relevance to the pending case, but addressed them to the extent they did have any legal relevance.

Regarding the retail sales factor of R.C. 4517.55(A)(1), the hearing examiner found that it should not be considered in favor of or against either party in the Toyota protest. As to the General Motors protest, the hearing examiner noted that Zinn had consistently performed below average in sales effectiveness for the five preceding years and found that General Motors had proven this factor weighed in favor of termination.

Regarding the investment and ongoing obligation factors of R.C. 4517.55(A)(2) and (3), as to both Toyota and General Motors, the hearing examiner found that the dealership facilities were Zinn's personal assets. Therefore, the examiner concluded that these factors were not legally material and weighed in favor of termination.

Regarding the adequacy of sales and service factors of R.C. 4517.55(A)(5), the hearing examiner found that, under the Toyota protest, this criterion had little relevance. As to the General Motors protest, the examiner found that the dealership had performed below average in sales effectiveness, customer service, and customer satisfaction over the last five years and, thus, General Motors had proven that this factor weighed in favor of termination.

Regarding the warranty obligations factor of R.C. 4517.55(A)(6), the hearing examiner found that Toyota had proven that this criterion weighed in favor of termination. The examiner made the same finding for the General Motors protest, noting that General Motors had established that the dealership ranked in the bottom twenty percent in customer satisfaction over the last five years, including the area of warranty work.

The hearing examiner found the factors set forth in R.C. 4517.55(A)(4), (7), (8), and (9) relevant to the protests. Regarding the public interest factor of R.C. 4517.55(A)(4), the hearing examiner found as a matter of law that excluding convicted felons from being dealer operators serves a legitimate public interest and, accordingly, found that Toyota and General Motors had proven that this criterion supported terminating the dealership.

Regarding the failure to comply with the terms of the franchise agreement under R.C. 4517.55(A)(7), the hearing examiner determined that Zinn's felony conviction constituted a material breach of his dealer agreements. The hearing examiner also noted that Zinn's breach of the dealer agreement resulted in negative publicity that undermined the perceived integrity of General Motors's dealer network and adversely affected General Motors's legitimate interests. Accordingly, the hearing examiner found that Toyota and General Motors had proven that this criterion supported termination.

Regarding whether Zinn had actual knowledge of the facts and circumstances upon which the termination was based under R.C. 4517.55(A)(8), the hearing examiner found that the evidence established that he did have knowledge of the facts and circumstances and that Toyota and General Motors had proven that this criterion supported termination of the dealership.

Regarding whether the termination constituted discriminatory enforcement of the franchise agreements under R.C. 4517.55(A)(9), the hearing examiner found that the evidence established that Toyota and General Motors had objective and uniform policies of terminating dealers convicted of a felony. Accordingly, the examiner found that the franchisors had proven that this criterion supported termination.

In his amended recommendation of the Chrysler protest, the hearing examiner found that Zinn's felony conviction based on fraud and conspiracy to commit fraud satisfied the four factors set forth in R.C. 4517.55(A)(4), (7), (8), and (9). The examiner's findings under these four factors are essentially the same as the findings made as to the General Motors and Toyota protests. As in the General Motors and Toyota protests, the examiner found that the factors of R.C. 4517.55(A)(1), (2), (3), and (5) had little, if any, bearing on demonstrating good cause under the circumstances of the case; however, to the extent that they had any bearing, Chrysler had carried its burden of proof on these factors. Regard-

ing R.C. 4517.55(A)(6), the examiner found that it weighed in favor of neither side.

The two public members of the board responsible for rulings on the protest held a hearing to consider the amended recommendations of the hearing examiner. At the hearing, a board member expressed reservations as to whether there was good cause when there was no evidence that the general public had lost confidence in the car dealerships. This perception appears to be based upon numerous letters submitted to the board subsequent to the remand to the hearing officer for an amended recommendation. At the close of the hearing, the two board members voted to modify the hearing examiner's conclusions.

In three separate but essentially verbatim orders, the board upheld appellants' protests against termination of the franchises. The board accepted the hearing examiner's findings of fact. However, the board concluded that Zinn's conviction had no negative effect on a legitimate interest of a party and, therefore, did not materially breach the franchise agreements. Accordingly, the board did not adopt the hearing examiner's conclusions of law that appellees had established that Zinn's felony conviction constituted a material breach of the franchise agreements, that satisfaction of one of the nine factors may be sufficient to terminate a dealership, and that Zinn's felony conviction and the circumstances surrounding the decisions to terminate the franchises satisfied the good cause requirement of R.C. 4517.55(A). The board stated that it would "look to other factors to determine if there was good cause to terminate. The board concludes there were no other factors presented in terms of R.C. 4517.55(A)(1–9) that either combined with the conviction or on their own constituted good cause." Thus, the board determined that appellees had not established good cause. The board failed to address the hearing examiner's additional conclusions in each of his recommendations that a consideration of all the listed factors under R.C. 4517.55 either weighed in favor of finding that appellees had met their respective burdens of establishing good cause or did not weigh in support of either side.

Pursuant to R.C. 119.12, appellees appealed the board's orders to the Franklin County Court of Common Pleas, where the cases were consolidated.

The trial court found that Zinn's fraud conviction, which was also a crime that involved moral turpitude as well as an employee of his dealership, constituted, without question, good cause to terminate a dealership. Citing *Geisert v. Ohio Motor Vehicle Dealers Bd.* (1993), 89 Ohio App.3d 559, 626 N.E.2d 960, and *Jurek v. Ohio Motor Vehicle Dealers Bd.* (1994), 99 Ohio App.3d 437, 651 N.E.2d 3, the court found that the board erred as a matter of law when it concluded that Zinn's conviction did not constitute good cause.

Further, the court held that the board erred as a matter of law when it found that appellees had failed to meet their burden of demonstrating that Zinn's

conviction materially breached the franchise agreements. The court discussed *Jurek*'s holding that R.C. 4517.12(B) and Ohio Adm.Code 4501:1–3–09, which operate to automatically deny dealer licenses to convicted felons, do not violate the felon's right to equal protection because they further "the legitimate state interest of reducing the risk of consumer exposure to possibly unscrupulous sales practices." *Jurek*, 99 Ohio App.3d at 440, 651 N.E.2d at 5. Relying on *Jurek*, the court reasoned that, if the state had an interest in automatically denying dealer licenses to convicted felons strong enough to withstand an equal protection challenge, then the franchisor's interest in terminating franchises with convicted felons is significant enough to constitute good cause as a matter of law, regardless of any other factors that might weigh against finding good cause.

Although the court held that a person convicted of any felony forfeits the right to hold a dealer's license, it noted that the additional facts, that Zinn's conviction was for a fraud and involved his dealerships, provided added support for finding good cause to terminate appellants' franchises. Thus, the trial court held that the board's order was not in accordance with law and reversed it.

The trial court was required to affirm the board's order if a consideration of the record established that reliable, probative, and substantial evidence supported the order and if the order was in accordance with law. R.C. 119.12. A common pleas court should generally defer to administrative resolution of evidentiary conflicts. *Gen. Motors Corp. v. Joe O'Brien Chevrolet, Inc.* (1997), 118 Ohio App.3d 470, 482, 693 N.E.2d 317, 325. Thus, as long as there is reliable, probative, and substantial evidence that supports the board's findings, the common pleas court may not substitute its judgment as to disputed facts. *Id.* Whether any evidence supports the decision is a question of law. *Id.* at 483, 693 N.E.2d at 325–326.

The responsibility of this court in a R.C. 119.12 appeal is to determine whether the trial court abused its discretion when it reviewed the administrative order, *id.*, and to conduct a plenary review to determine whether the administrative decision is in accordance with law. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595–596.

On appeal, appellants contend that the trial court improperly rewrote R.C. 4517.55 to automatically require the board to find good cause for terminating a franchise when the dealer has been convicted of a felony.

For the following reasons, this court affirms the trial court's decision on the basis that the board's conclusion that good cause had not been established is erroneous as a matter of law because it was not supported by any reliable, probative, and substantial evidence.

■ Preliminarily, the board's indication that factors other than the felony conviction were needed to establish good cause is not supported by the cases interpreting R.C. 4517.55. In *Chesapeake Ford, Inc. v. Ohio Motor Vehicle Dealers Bd.* (1995), 103 Ohio App.3d 515, 521, 660 N.E.2d 481, 485, this court ruled that R.C. 4517.55 does not require express consideration of each of the enumerated circumstances and found one factor, pervasive fraud in the service department, sufficient to support a good cause determination. There is no language in R.C. 4517.55 that indicates that more than one factor must weigh in favor of a good cause determination before a franchise may be terminated.

Even assuming the board to be correct and more than one factor must favor finding good cause to terminate, the hearing examiner did consider factors in addition to the felony conviction in the course of finding good cause to terminate the franchise. In its orders, the board adopted all of the hearing examiner's findings of fact, which are not disputed by appellants, and those facts lead only to the conclusion that appellees met their burden to show good cause to terminate the franchises.

■ As to the hearing examiner's fact findings under the General Motors protest, the hearing examiner found that a felony conviction for fraud committed by a dealer/operator undermines the trust between the manufacturer and the dealer, and between the public and the dealer. The hearing examiner also found that, from 1991 to 1995, appellants' overall sales effectiveness had been in the bottom half of Chevrolet dealers in their service area and consistently ranked in the bottom twenty percent of all dealers in customer service and satisfaction. The hearing examiner also found that appellants, the dealerships, as corporate entities, had made few investments into the dealership and that the property and facilities were personally owned by Zinn. These findings of fact all weigh in favor of finding good cause to terminate the franchise. The board's conclusion that General Motors had not met its burden of demonstrating good cause is not supported by the facts as found by the hearing examiner and accepted by the board.

■ Similarly, under the Chrysler protest, the hearing examiner made findings of fact that appellants had been sizably undercapitalized every year from 1991; that between 1992 and 1996, their new vehicle sales volume increased at less than half the rate as the zone level and actually decreased between 1995 and 1996; and that appellants performed poorly in service-related areas compared to the zone average and that their scores on owner loyalty were below both zone and national averages. Although the hearing examiner found that Chrysler did not dispute that, but for the felony conviction, it would not have sought termination, does not negate the fact that circumstances other than the felony conviction weighed in favor of terminating the franchise. Thus, in light of the board's acceptance of the

hearing examiner's findings of fact, which weigh heavily in favor of termination, the board's order to the contrary is not supported by reliable, probative, and substantial evidence, and is error as a matter of law.

■ Finally, as to the Toyota protest, in addition to the circumstances underlying the conviction, the hearing examiner found that Toyota's felony-termination clause was very important to Toyota, that it uniformly terminated dealerships following felony convictions, that Zinn personally owned the dealership facilities and would continue to retain them after termination of the franchise, and that other Toyota dealers could provide adequate service if appellants' franchises were terminated. In light of the absence of other findings of fact that weigh against finding good cause, the board's order is not supported by reliable, probative, and substantial evidence.

For the above reasons, appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PETREE and PEGGY BRYANT, JJ., concur.

PEGGY BRYANT, J., concurring.

I concur with the majority's decision affirming the judgment of the trial court. I do so because the findings of fact adopted by the Ohio Motor Vehicle Dealers Board ("board") weigh heavily for termination and render the board's decision error as a matter of law.